John E. Hill, State Bar #45338
Enrique Martínez, State Bar #206884
LAW OFFICES OF JOHN E. HILL
333 Hegenberger Road, Ste. 500
Oakland, CA 94621
Telephone: (510) 588-1000
Facsimile: (510) 632-1445
enriquemartinez@hill-law-offices.com

Ramsey Hanafi, State Bar # 262515
QUINTANA HANAFI, LLP
870 Market Street, Suite 1115
Tel.: (415) 504-3121
Fax: (415) 233-8770
info@qhplaw.com

*Attorneys for Plaintiff & Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA CHAMPAGNE, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>PLANNERNET, INC., a North Carolina Corporation,<br><br>    Defendant. | Case No. 3:17-cv-02128-SK<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:   September 23, 2019<br>Time:   9:30 am<br>Judge:  Hon. Sallie Kim<br>Ctrm:   15 |

# TABLE OF CONTENTS

I. INTRODUCTION……………………………………………………………………1

II. FACTS AND PROCEDURAL HISTORY……………………………………………..2

A. Following Notice to the Settlement Class, No Class Member Has Objected to the Settlement, and Three Class Members Have Opted Out……………………………………………..2

B. Settlement Amount…………………………………………………………………2

1. Expenses of the Settlement Administrator……………………………………3

2. Service Award to Named Plaintiff……………………………………………..3

3. Attorneys' Fees and Costs……………………………………………………..3

4. Allocation of Net Settlement Fund……………………………………………4

5. Payment to California Labor and Workforce Development Agency………………4

6. Uncashed Funds………………………………………………………………4

7. Release of Claims……………………………………………………………..4

III. ARGUMENT……………………………………………………………………5

A. The Proposed Settlement Is Fundamentally Fair, Reasonable, and Adequate, and Meets the Standard for Final Approval……………………………………………………5

1. The Notice Procedure Complied with Rule 23 Requirements………………………5

2. The Proposed Settlement is Fair, Reasonable, and Adequate……………………6

a. Strength of Plaintiff's Case……………………………………………………7

b. Risk, Expense, and Likely Duration of Further Litigation…………………8

c. The Amount Offered in the Settlement………………………………………9

d. The Extent of Discovery Completed and the Stage of Proceedings……………………………………………..10

e. The Experience and Views of Counsel…………………………………………11

f. Class Members Reaction to the Proposed Settlement……………………...11

g. There are No Signs of Collusion……………………………………………..11

h. The Service Award and Requested Attorneys' Fees and Costs are Reasonable……………………..……………………….12

IV. CONCLUSION…………………………………………………………………..13

# TABLE OF AUTHORITIES

## CASE LAW

*Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (citations omitted)..........................................9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998).........................................................10

*Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011)....................................................................................................................................................16

*In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).......................9, 15

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015).....................................9

*In re Online DVD-Rental*, 779 F.3d at 944 ........................................................................................10

*Lane v. Facebook, Inc.*, 696 F.3d 811, 831-32 (9th Cir. 2012)...........................................................15

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) ............................................14

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc. (DIRECTV)*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004) ...................................................................................................................................10

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) .............................................................................................................................................10

*Pointer v. Bank of Am., N.A.*, No. 2:14-CV-00525-KJM-CKD, 2016 WL 7404759, at *10 (E.D. Cal. Dec. 21, 2016) ...........................................................................................................................11, 14, 15

*Valdez v. Neil Jones Food Co.,* No. 1:13-CV-00519-SAB, 2016 WL 4247911.........................passim

## STATUTES

California Labor Code, California Business and Professions Code § 17200 *et seq*. ....................1, 5, 8

California Private Attorney General Act ("PAGA"), Cal. Lab. Code § 2698 *et seq*. .................passim

Labor Code § 203 ................................................................................................................................10

## RULES

Federal Rule of Civil Procedure 23................................................................................................passim

## I. INTRODUCTION

Plaintiff Linda Champagne filed this class action on behalf of current and former on-site meeting and event planners, known as "Meeting Managers" or "Suppliers" who supported Defendant Plannernet Inc.'s clients in California during the class period. Plaintiff alleges that the Meeting Managers were employees who were misclassified as independent contractors and that Defendant violated California law by, among other things, failing to pay the affected individuals overtime compensation and regular wages, failing to provide adequate meal and rest periods, and failing to reimburse them for work-related expenses. (Dkt. 1.) Plaintiff alleges claims under the California Labor Code, California Business and Professions Code § 17200 *et seq.*, and the California Private Attorney General Act ("PAGA"), Cal. Lab. Code § 2698 *et seq*. Defendant has consistently denied, and continues to deny, each of Plaintiff's allegations.

The Court certified a class of Meeting Managers who worked in California at Defendant's client's events with 50 attendees or more during the class period. (Dkt. 40, Order Granting Plaintiff's Motion to Certify Class.) Thereafter, the parties reached a proposed settlement ("Settlement Agreement") to resolve the claims of Meeting Managers who provided on-site meeting and event planning services at client events in California, including those with fewer than 50 attendees, during the class period. The Court granted preliminary approval of the parties proposed settlement on April 22, 2019. (Dkt. 82, Order Granting Motion for Preliminary Approval.) Following that Court's Order, Plaintiff's counsel submitted a revised Notice and Settlement Agreement on May 6, which was also approved. (Dkt. 85.)

Plaintiff now seeks final approval of the class-wide settlement agreement, which is attached as Exhibit 1 to the accompanying Declaration of Ramsey Hanafi in Support of Motion for Final Approval of Class Action Settlement ("Hanafi Decl."). Subject to the Court's approval, the basic terms of the Settlement Agreement include Defendant's payment of $440,000 to a common fund for distribution to the class, after payment of the cost of notice and claims administration, payment of a service award to the Named Plaintiff, and payment of attorney fees and costs. Any unclaimed funds will be reallocated to class members who cashed their settlement checks. No funds will revert to

Defendant. Class Counsel seeks approval of a service award of $8,500 to be paid to Linda Champagne for her time, effort, and risks in bringing this lawsuit on behalf of the class, as provided in the proposed Settlement Agreement.  Class Counsel will also seek attorney fees equal to 30 percent of the common fund ($132,000, which is lower than the lodestar amount), and will seek actual expenses up to $7,900.

## II. FACTS AND PROCEDURAL HISTORY

### A. Following Notice to the Settlement Class, No Class Member Has Objected to the Settlement, and Three Class Members Have Opted Out.

All of the revisions required by the Court in its April 22 preliminary approval order were completed, and the Court approved the revised Notice and Settlement Agreement on May 8, 2019. (Dkt. 85.) Part of the revised notice included a process by which class members could correct data concerning the number of events they worked, which would affect their total payout. In response to this Notice, CPT and counsel for all parties reviewed five class member proposed corrections to their settlement amounts. Four of these proposed corrections were approved by all parties and applied to the class members' settlement payouts. One class member review is still pending as it was received on August 16, 2019. (Hanafi Dec. ¶ 18.)  No class member has objected to the settlement, and three class members have opted out, for an exclusion rate of less than 1%.

### B. Settlement Amount

Under the Settlement, Plannernet will make a gross payment of $440,000 (the "Settlement Amount"). The $440,000 will be paid in two installments.  The first installment of $220,000 will be paid within 30 days after the date of the final approval order.  (Settlement Agreement, ¶ VI(8)(a).[1]) The second installment of $220,000 will be paid one year after the date of the first payment.  (*Id.*, VI(8)(b).)

The Settlement Amount will be allocated as follows:

---

[1] Under limited circumstances, the deadline for the first installment payment will be extended. Settlement Agreement, ¶ VI(1)(f), (8)(a).

| | |
|---|---|
| **Gross Settlement Amount** | $440,000 |
| Proposed Fee Award (30%) | -$132,000 |
| CPT Group administration costs | -$15,000 |
| Case Costs | -$7,900 |
| PAGA payments to State of California | -$7,500 |
| Enhancement Award | -$8,500 |
| **Total (Net) Settlement for Class Members** | $269,100 |

### 1. Expenses of the Settlement Administrator

The original settlement agreement allocated $15,000 as costs to CPT Group. (Settlement Agreement, ¶ VI(5)(a).[2])

### 2. Service Award to Named Plaintiff

Subject to Court approval, $8,500 from the Settlement Amount will be paid to the Named Plaintiff as a service award for her time, effort, and risks involved in bringing this lawsuit on behalf of the class. (Settlement Agreement, ¶¶ VI(5)(a), (9)(c).) Pursuant to the Court's Preliminary Approval Order, the service award will be split into two equal payments, along with the rest of the class member payments.

### 3. Attorney Fees and Costs

The Settlement Agreement provides that Class Counsel will seek attorney fees equal to 30 percent of the Settlement Amount, which is $132,000. (Settlement Agreement, ¶¶ VI(5)(a), (9)(a).) This amount is lower than the lodestar, which is $380,908.75. (*See* Declaration of Ramsey Hanafi in Support of Motion for Enhancement Award and Attorneys' Fees and Costs, ¶ 11.) In addition,

---

[2] The Notice mailed to Class Members stated that CPT Group would be allocated $18,000, and the calculated amounts in these Notices thus used a smaller total "net settlement" pool of $266,100 for each class members' calculations. During preparation for final approval, Plaintiff's counsel discovered that this quote was based on an incorrect overcount of the class size that was never corrected by CPT Group. CPT Group agreed that since their $18,000 quote was based on this erroneous count, the actual cost should be the $15,000 that was originally quoted to the parties based on the correct class size. Because the calculations in the Notice were based on this $18,000 quote, $3,000 additional dollars will enter the net settlement fund for class members, resulting in a small increase in each class members' stated amount in their respective notices.

Class Counsel will seek actual costs not to exceed $7,900.  (Settlement Agreement, ¶¶ VI(5)(a), (9)(b).)

### 4. Allocation of Net Settlement Fund

After the payment of notice and claims administration, the service award to the Named Plaintiff, and attorney fees and costs, the remaining amount (the "Net Settlement") of $269,100 will be allocated for distribution to the class members based on alleged estimated overtime hours worked and meal and rest period premiums owed, with additional penalties distributed on a pro rata basis.  Class Members will be paid no less than the amounts indicated on their Class Notices. (Settlement Agreement, ¶ VI(6).)   $10,000 will be allocated to the settlement of PAGA claims, with $2,500 going back to the class pursuant to PAGA. (*Id*., ¶ VI(5)(a).)

### 5. Payment to California Labor and Workforce Development Agency

Of the $10,000 allocated to the settlement of PAGA claims, 75 percent ($7,500) will be paid to the California Labor and Workforce Development Agency ("LWDA") pursuant to PAGA, Cal. Labor Code §2699(i) and (j).  (Settlement Agreement, ¶ VI(5)(a).) The remaining $2,500 is included in the $269,100 Net Settlement.

### 6. Uncashed Funds

All uncashed checks issued to class members will be voided after 180 days.  If any portion of the common fund remains in the trust account after the payment of notice and claims administration, the service award to the Named Plaintiff, attorney fees and costs, payment to the LWDA, and all settlement payments to class members, then the remainder will be reallocated on a pro rata basis to class members who cashed their settlement checks.  (Settlement Agreement, ¶ VI(8)(e).)

### 7. Release of Claims

Each class member who has not opted out within the exclusion period shall be deemed to have jointly and severally released Defendant from any and all settled claims, whether known or unknown.  (Settlement Agreement, ¶ VI(3).)  For all class members except the Named Plaintiff, the release applies only to claims under the California Labor Code, the California Business &

Professions Code, and PAGA, which were, or could have been, based on the facts set forth in the First Amended Complaint.  (*Id.*; *compare id.*, ¶ VI(4) [general release by Named Plaintiff].)

### III. ARGUMENT

#### A. The Proposed Settlement Is Fundamentally Fair, Reasonable, And Adequate, And Meets the Standard for Final Approval

There is a "'strong judicial policy'" in favor of settlement of class actions. *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (citations omitted).  Nevertheless, this Court must review settlements to protect the interests of absent class members. *Id*.  Under Rule 23(e), approval "'may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (quoting *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)); *see also, e.g., Valdez v. Neil Jones Food Co.,* No. 1:13-CV-00519-SAB, 2016 WL 4247911, at *4-*5 (E.D. Cal. Aug. 10, 2016).  The standard for final approval has been met here.

##### 1. The Notice Procedure Complied with Rule 23 Requirements

Notice was sufficient to comply with Rule 23.  Rule 23(c)(2)(B) requires "the best notice practicable under the circumstances" for classes certified under Rule 23(b)(3).  Following the Courts initial April 22 Order Granting Preliminary Approval, the Court ordered the following changes the following changes to the Class Notice:

- Clarifying that Class Members were eligible to receive expense reimbursements only as to the $50 application fees, due to the difficulty of proving other expense damages on a class wide basis;

- A procedure by which Class Members could challenge the amount of their individual settlement, with a clear description of the documents to be provided for any such challenge, and a description of how funds would be re-distributed following any such change to a class members' settlement amounts.

The parties made the above changes and Plaintiff submitted an updated proposed Notice to the Court on May 6, 2019, which the Court approved on May 8, 2019. (Dkt. 85.) Prior to the

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
5

mailing of the Notice, Defendant submitted a list that included 16 new class members. The inclusion of these new members caused a small decrease in the average award of approximately $50, bringing the average award to $617.20. (Hanafi Dec., ¶ 16; Declaration of Daniel La, ¶ 14.)

The attached declaration of Daniel La of CPT Group details the Notice process. ("CPT Dec.".) Generally: prior to mailing, CPT conducted a National Change of Address (NCOA) search to update the class list of addresses received from Defendant as accurately as possible. CPT located forty new addresses, and all Notices were mailed on May 31, 2019, with an objection and dispute deadline of August 29, 2019, or 91 days from the date of mailing. (CPT Dec. ¶ 6.) Following skip traces for undeliverable Notices, ten notices were re-mailed, with twelve notices remaining undeliverable.

As of the date of filing, four disputes of the settlement amounts have been received and resolved, with each claimant's dispute being granted in the class member's favor (i.e., all their claimed missing or mis-counted events were added, and their settlement amount was adjusted). (CPT Dec. ¶ 10; Hanafi Dec. ¶ 18.) Three opt-outs were received, bringing the total class size to 436. (CPT dec. at ¶¶ 12, 13.) No objections have been received as of the date of this filing. (*Id.* at ¶ 11.) CPT will provide a supplemental declaration prior to the hearing in case any of the above data changes. (*Id.* at ¶ 16.)

## 2. The Proposed Settlement is Fair, Reasonable, and Adequate.

Rule 23(e) requires that a class action settlement be fair, reasonable, and adequate. "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998). In determining whether a class action settlement is fair, the Court considers:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *In re Online DVD-Rental*, 779 F.3d at 944 (citations omitted); *Valdez,* 2016 WL 4247911, *6.

A single factor may be sufficient to support final approval, and not all factors apply to every class action settlement. *Valdez,* 2016 WL 4247911, *6 (citing *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc. (DIRECTV)*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004)).  Here, all of the relevant factors favor approval of the class action settlement.

### a.  Strength of Plaintiff's Case

An important consideration in determining whether a settlement is reasonable is to weigh the strength of Plaintiff's case against the amount of the settlement. *Valdez*, 2016 WL 4247911, at *6 (citations omitted).  "The court's role is not to reach any ultimate conclusion on the facts or law which underlies the merits of the dispute as the very uncertainty of the outcome and the avoidance of expensive and wasteful litigation is what induces consensual settlements." *Id*. (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). "The court in fact cannot reach such a conclusion because evidence has not been fully presented and typically 'settlements [are] induced in large part by the very uncertainty as to what the outcome would be, had litigation continued.'  Instead, the court is to 'evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements.'"  *Pointer v. Bank of Am., N.A.*, No. 2:14-CV-00525-KJM-CKD, 2016 WL 7404759, at *10 (E.D. Cal. Dec. 21, 2016) (citation omitted).  "[T]he reasonable range of settlement is arrived at by considering the likelihood of a verdict for the plaintiff or defendant, 'the potential recovery, and the chances of obtaining it, discounted to a present value.'" *Valdez*, 2016 WL 4247911, at *6 (citations omitted).

The complaint alleges claims for unpaid overtime compensation, failure to provide meal and rest breaks, failure to reimburse for work-related expenses, failure to provide accurate wage statements, unfair business practices, waiting time penalties, and violation of PAGA. Plaintiff believes that the law and the facts support their claims that Meeting Managers were misclassified and are owed wage damages for the above allegations. Defendant continues to deny these allegations. While Plaintiff believes their case is strong, the primary risk identified in discovery and

settlement talks is Defendant's ability to pay a potential judgment, or even continue operating pending what would ultimately be long and costly litigation. (Hanafi Dec. ¶ 3.)

Plannernet is not a large company and Plaintiff has genuine concerns that a large judgment would result in potential bankruptcy. Even a modest judgment in this case would still potentially warrant a large penalty award along with a large amount of attorneys' fees and high costs. While Plaintiff and her counsel are confident of a victory were this case to proceed, they are also genuinely concerned that the result would still be zero recovery for the class. This settlement ensures that class members will receive an amount that is likely more than the entirety of the wages owed to the class.

Given the potential uncertainties, the settlement will provide class members with substantial relief now, while avoiding the risks, delays, and expense of continued litigation. *See Valdez*, 2016 WL 4247911, *6 ("Given the uncertainty of ultimate success at trial, the proposed settlement provides the parties with a fair resolution of the issues presented which weighs in favor of settlement."). This factor weighs in favor of settlement.

                                                   *b. Risk, Expense, and Likely Duration of Further Litigation*

"'In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Valdez*, 2016 WL 4247911, at *7 (citations omitted). Without settlement, this class action would involve extensive litigation.

The most complex task facing Plaintiff's trial plan in this case would be proving damages, due to the lack of adequate records for class members. (Hanafi Dec. ¶ 8.) The Court noted in its class certification order that as to the lack of records "[t]his problem is not unique to this case, as workers who are classified as independent contractors, even wrongfully, often do not keep records of the hours they work." (Dkt. 40, p. 20.). Demonstrating damages would be necessary in any trial plan and doing so here would be costly and time consuming. (Hanafi Dec. ¶ 8) Plannernet maintains records of scheduled events worked for Meeting Managers, but does not maintain any records of the actual hours worked by any Meeting Managers, and pays its contractors a fixed fee per event that

changes based on each client. (Hanafi Dec., ¶ 8.) Demonstrating that events were actually worked by each class member would require matching a patchwork of thousands of individual job board postings to their associated pay checks, along with accompanying emails to see if there was additional unpaid time not on the job board schedule. (*Ibid.*) Further, since pay checks contain zero information as to hours actually worked, there are no records of any hours worked beyond those in each job listing's schedule and accompanying emails, meaning there is no straightforward method of common proof for damages of (a) missed meal and rest periods and (b) hours worked beyond those included on a scheduled event. Defendant would raise numerous individualized issues in its defense against any attempt to collectively prove missed meal and rest periods, or any other damages for which records do not establish a means of common proof. Proving that every event incurred at least one missed meal and rest break, due to the lack of any time records, would have been difficult and likely necessitated expert statistical testimony. Plaintiff's counsel would consider any ruling similar to this settlement a success. (*Id.* at ¶ 11.)

This would ultimately be an expensive and potentially complex trial as to some of the claims, with a higher than normal risk of ultimately not collecting on the judgment, or not collecting the full amount awarded. "Legal complexity, factual complexity, even complexity in one portion of the case (such as determining damages), all weigh in favor of settlement. This is true even if the plaintiffs have a strong case and good chance of winning at trial." 4 Newberg on Class Actions § 13:52 (5th ed.). This factor, too, weighs in favor of settlement.

        *c.* *The Amount Offered in the Settlement*

The settlement fund is $440,000, none of which will revert back to Defendant. The settlement provides a substantial award to the class as compared with the potential damages recovered at trial. Class counsel estimated total damages for wages, unpaid meal breaks, unpaid rest breaks, and expenses at $139,760. (Hanafi Dec. ¶ 15.) The portion of the $440,000 settlement allocated to the class pays the entirety of these estimated wage damages, consisting of (a) one hour of overtime wages per event lasting more than eight hours; and (b) one missed meal and one missed rest break for each event lasting over four hours, and (c) $50 in unpaid expenses for class member

"application fees"; (Hanafi Dec. ¶ 9.) The remaining $119,938 covers (c) "waiting time penalties" on a pro rata basis for each "inactive" class member; (d) Labor Code 226 penalties for non-compliant paystubs on a pro rata basis; and (e) PAGA penalties on a pro rata basis. (Hanafi Dec. ¶ 15.) The highest payout is $6,652.35, while the lowest payout (i.e., those class members who worked a single four-hour event) is $58.13. The average payout is $612.20. (CPT Dec., ¶ 4; Hanafi Dec. ¶ 16.) Any unclaimed funds will revert back to the class members on a pro rata basis.

Class counsel estimates that the settlement fund compensates the class for 9% percent of the maximum exposure for penalties in this case (items (c), (d), (e), and (f) in the above list). (Hanafi Dec. ¶ 13.) The estimated penalty exposure in this case was much larger than the possible wage damages. While Plaintiff is fairly confident that they would ultimately win this case and that Defendant would be liable for these penalties, two factors nonetheless weigh in favor settlement of these claims: (1) these penalties are at the discretion of the court, and Defendant maintains affirmative defenses of willfulness as to Labor Code 226 and Labor Code 203 penalties, and (2) the Defendant's ultimate ability to pay a substantial penalty judgment is questionable. (*Ibid.*) Plaintiff is faced with the ultimate reality that collection of a substantial fee award is highly unlikely. The Settlement will provide class members with substantial relief now, while avoiding the risks and delays in continued litigation, which could be prolonged, complex, and expensive. In short, given the amount being offered in settlement, there is little reason to believe that further litigation would lead to a more favorable result.

    d. *The Extent of Discovery Completed and the Stage of Proceedings*

"In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *Pointer,* 2016 WL 7404759, at *12 (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

Class counsel did not yet begin "merits discovery" as to the full scope of damages in this case, given the matter settled shortly after class certification, with the assistance of mediator and former San Francisco Superior Court Judge Ernest Goldsmith (Ret.). A complete assessment of time

records for the entire class would be the single largest expense of dollars and time in this case, given the state of the records. (Hanafi Dec. ¶ 8.) During the pre-certification discovery phase, and on an informal basis for the purposes of settlement, Class counsel received enough information to (a) estimate class-wide damages; (b) gauge the likelihood of a liability finding; and (c) gauge the ability of the Defendant to pay any judgment. (Hanafi Dec.¶¶ 7-13.) Based on the discovery to date, counsel believes this settlement is close to the best possible result for this case.

### e.  The Experience and Views of Counsel

"The Court is to accord great weight to the recommendation of counsel because they are aware of the facts of the litigation and in a better position than the court to produce a settlement that fairly reflects the parties' expected outcome in the litigation." *Valdez*, 2016 WL 4247911, at *8 (internal citation omitted).  Class counsel are experienced practitioners who have successfully litigated wage and hour class actions.  (*See* Declaration of Ramsey Hanafi in Support of Motion for Enhancement Award and Attorneys' Fees and Costs, ¶¶5-9.)  Based on their extensive class action experience, they believe that the settlement is fair, reasonable and adequate, and should be approved.

Further, in addition to Class Counsel's experienced opinion, the settlement is entitled to a presumption of fairness in light of the arm's-length negotiations, facilitated by Judge Goldsmith for weeks following the parties' mediation and class certification order. *Corson*, 2016 WL 1375838, at *7 (citing 4 Newberg on Class Actions § 11.41 (4th ed.2013)).

### f.  Class Members' Reaction to the Proposed Settlement

There are 436 class members. No class member filed an objection, and only three opted-out. (CPT Dec., ¶¶ 11,12.) Five class members took advantage of the dispute provisions provided to them to challenge their awards, and four of those disputes were resolved to the satisfaction of each class member. (*Id.* at ¶ 10; Hanafi Dec. ¶ 18.)  One dispute is pending. (*Ibid.*) This factor, too, weighs strongly in favor of settlement. *See Valdez*, 2016 WL 4247911, at *8 ("The absence of any objections is compelling evidence that the settlement is fair, adequate and reasonable."  (citation omitted)).

### g.  There Are No Signs of Collusion

Collusion is generally more of an issue when a case is settled prior to certification. *See Valdez*, 2016 WL 4247911, at *8 (citing *In re Bluetooth Headset*, 654 F.3d at 946); *see also generally Lane v. Facebook, Inc.*, 696 F.3d 811, 831-32 (9th Cir. 2012).  Nonetheless, even if all of the pre-certification collusion factors were examined, this factor still weighs in favor of settlement. "Warning signs" of collusion include when: (1) "'counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;'" (2) "the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds;" and (3) "the parties arrange for fees not awarded to revert to defendants rather than to be added to the class fund." *In re Bluetooth Headset*, 654 F.3d at 947 (citations omitted).

 None of these warning signs exist here. Counsel is seeking no more than a 30% distribution from the overall settlement amount, which is only 5% above the "benchmark" in this circuit. *Valdez,* 2016 WL 4247911, at *8; *see also Pointer*, 2016 WL 7404759, at *13.  The reasonableness of the fees is confirmed by the lodestar cross-check, which is addressed in more detail in the accompanying motion for fees filed contemporaneously with this motion.

Second, while the Settlement Agreement provides that Defendants will not contest the application for attorney fees, this is not a "'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds. . . ." *In re Bluetooth Headset*, 654 F.3d at 947; *Pointer*, 2016 WL 7404759, at *13 ("Although defendant agreed not to oppose class counsel's request for attorney's fees, those fees will come from the settlement fund, so defendants' agreement does not raise a substantial concern here.").  Class counsel's fee is linked to the common fund as a percentage of the fund, so their interests are aligned with those of the class in maximizing the total recovery.  Accordingly, this factor does not raise a concern.

Third, the unclaimed funds do not revert to Defendants, but rather will go back to the class.

Further, where, as here, the settlement was negotiated with the assistance of an experienced private mediator, this too supports a finding that there was no collusion. *See Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).

    h.   The Service Award and Requested Attorneys' Fees and Costs Reasonable.

The Court's April 22 Order Granting Preliminary Approval directed counsel to address the service award and counsel's fees and costs in a separate motion. In that motion, filed contemporaneously herewith, Counsel explains why the $8,500 service award, counsel's requested 30% fee award, and counsel's requested $7,900 in costs, is reasonable.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court finally approve the proposed Settlement Agreement, award enhancement award of $8,500 to the Plaintiff Linda Champagne, and award $132,000 in fees and $7,900 in costs to Plaintiff's counsel.

Dated: August 16, 2019          Respectfully submitted,

**LAW OFFICES OF JOHN E. HILL**

By: */s/:Enrique Martinez*
Enrique Martínez

**QUINTANA HANAFI, LLP**

By: */s/: Ramsey Hanafi*
Ramsey Hanafi

Counsel for Plaintiff Champagne, for herself and all others similarly situated